# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1363

_____

Sonia Melendez, Personal Representative of the Estate of Benjamin Melendez, Deceased

*Plaintiff - Appellant*

v.

City of Grand Island, a Nebraska political subdivision

*Defendant - Appellee*

Hall County, Nebraska, a Nebraska political subdivision

*Defendant*

Jon Rosenlund, in his individual and official capacity; Brandon Kelley, 911 Dispatcher #1, in his individual and official capacity; Grady Higgins, 911 Dispatcher #2, in her individual and official capacity; Does, 1-10, in their individual and official capacities

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: December 18, 2025
Filed: February 10, 2026

_____

Before LOKEN, SMITH, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Benjamin Melendez, who had permanent brain damage, made several 911 calls in Grand Island, Nebraska, believing that police officers were stalking him. None of the calls lasted more than a minute and a half. During the first call he spoke with 911 dispatcher Brandon Kelley. Benjamin was ranting and became increasingly agitated, finally ending the call by shouting, "Step up to my home and you're dead." Kelley told officers that the caller was male and "extremely irate [and] yelling," but did not mention Benjamin's threat. No one answered when officers knocked on the door. Dispatch then called Benjamin repeatedly, which appellees say was accidental. Benjamin did not answer, but he called back and spoke with Kelley again, yelling that "you guys stalked me just now" and giving a false name.

Benjamin called a third time and spoke to dispatcher Grady Higgins. He was still agitated, saying things like, "I'm going to get on my outside property with a knife and we'll see who cut the bread." He ended with: "So if I hear a knock, I'm stabbing in the eyes." Higgins told his supervisor that Benjamin was "nuts" and reported to officers that Benjamin was "ranting again" and saying "something about bringing a knife out and stabbing somebody in his yard." Officers again responded. This time, Benjamin opened the door armed with a knife and stabbed an officer in the face, who shot and killed him.

Benjamin's mother Sonia Melendez concedes that the use of force was reasonable, but she sued Kelley and Higgins, arguing that they violated her son's Fourteenth Amendment rights because their interactions with Benjamin and failure to inform officers of his threats created the danger that led to his death. She also sued the City because it failed to adequately train the dispatchers. *See Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016) (citing *City of Canton v.*

*Harris*, 489 U.S. 378, 389 (1989)).[1]  The district court[2] found there was no Fourteenth Amendment violation because the dispatchers' conduct did not shock the conscience and, without any constitutional violation, there could be no *Monell* liability.  We review the grant of summary judgment *de novo* and affirm if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  *See Torgerson v. Roberts County*, 139 F.4th 638, 644 (8th Cir. 2025); Fed. R. Civ. P. 56(a).

The Due Process Clause of the Fourteenth Amendment "generally does not provide a cause of action for 'a [s]tate's failure to protect an individual against private violence.'" *Montgomery v. City of Ames*, 749 F.3d 689, 694 (8th Cir. 2014) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)).  But when the state creates the danger, "the Constitution requires [the] [s]tate to protect" and the state can be held liable for actions that "shock the conscience." *Id.* at 694–95.

We agree with the district court.  Nothing Kelley or Higgins did suggests that they intended to harm Benjamin or that they were deliberately indifferent to a substantial risk of serious harm. *Fields v. Abbott*, 652 F.3d 886, 891 (8th Cir. 2011) (standard for conscience-shocking behavior).  Though in hindsight perhaps the dispatchers could have done more, negligence or gross negligence does not shock the conscience. *Id.*  Sonia says that Kelley made Benjamin more agitated by arguing with him and that the dispatchers should have reported the extent of the threats to the officers.  But even assuming she's right, neither shows "a level of abuse of power so brutal and offensive" that it does "not comport with traditional ideas of fair play and decency."  *Id.* (citation omitted).  And because there was no Fourteenth

---

[1]Sonia did not appeal from the district court's decision to dismiss the claim against Director Jon Rosenlund.

[2]The Honorable Susan M. Bazis, United States District Judge for the District of Nebraska.

Amendment violation, the claims against the City also fail. *See Starks v. St. Louis County*, 159 F.4th 1146, 1150–51 (8th Cir. 2025).

The appellees also note that some courts have held that the state-created danger theory does not apply when "the injury occurs due to the action of another state actor." *Moore v. Guthrie*, 438 F.3d 1036, 1042 (10th Cir. 2006) (no claim where plaintiff was shot by fellow police officer during training because officer was a state actor); *see also, e.g., Doxtator v. O'Brien*, 39 F.4th 852, 866 (7th Cir. 2022) (state-created danger exception "applies only to situations in which the harm is perpetrated by *private* actors" (emphasis added)). While our case law also suggests this limitation, *see, e.g.*, *Freeman v. Ferguson*, 911 F.2d 52, 55 (8th Cir. 1990) ("[A] constitutional duty to protect an individual against *private violence* may exist in a non-custodial setting if the state has taken affirmative action which increases the individual's danger of, or vulnerability to, *such violence* beyond the level it would have been at absent state action." (emphasis added)), we need not decide the theory's breadth here because the dispatchers' actions do not "shock the conscience," *Montgomery*, 749 F.3d at 695.

Affirmed.

_____

-4-